NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 09-1415
_____

UNITED STATES OF AMERICA

v.

KEISER McCLINTON,

Appellant.
_____

On Appeal from the United States District Court
for the District of New Jersey
(D.C. No. 07-cr-00287-001)
District Judge:  Hon. William J. Martini
_____

Submitted Under Third Circuit LAR 34.1(a)
June 22, 2011

Before:  CHAGARES, JORDAN and GREENAWAY, JR., *Circuit Judges*.

(Filed June 23, 2011)
_____

OPINION OF THE COURT
_____

JORDAN, *Circuit Judge*.

Keiser McClinton appeals from his conviction in the United States District Court

for the District of New Jersey on charges of being a felon in possession of a firearm and

possessing an unregistered firearm. He argues that the District Court abused its discretion in failing to admit hearsay evidence and that the case should be remanded to the District Court for a new trial because of that alleged error. We are unpersuaded and will affirm his conviction.

## I.    Background

On January 5, 2007, Sergeant Venancio and Officers Pereira and Ramos of the Newark Police Department went to an apartment complex where there had been a shooting one week earlier. As they approached the courtyard of the complex, Pereira saw two men walking toward the rear of the complex. Noticing that one of them was carrying a sawed-off shotgun at his left side, Pereira immediately pointed out the danger to the other officers. The officers announced their status as policemen and ordered the two men to stop. Instead of complying, however, the men began to run away.

The officers pursued them toward the rear of the complex and into a stairwell. The man with the shotgun then ran to apartment 342B, pounded on the door and shouted "let me in." (App. 2 at 55-56; 89-90.) Someone opened the door and he ran inside, but Pereira, chasing close behind, was able to follow him into the apartment. Upon reaching a bedroom, the armed man, with Pereira only three feet behind him, shoved the sawed-off shotgun partway beneath a bed.[1] Pereira ordered him to show his hands and arrested him without further incident. Having secured the suspect, Pereira recovered from under the

---

[1] The attempt to hide the gun was only partially successful because the handle was still exposed.

bed a loaded, unregistered, twelve-gauge shotgun with a sawed-off barrel.  Meanwhile, the other officers chased and apprehended the other individual, whom they saw throwing a semi-automatic handgun on the ground near the stairwell.

The man arrested by Pereira was later identified as McClinton.  He was subsequently indicted for being a felon in possession of a firearm, in violation of 18 U.S.C. §§ 922(g)(1) and 924(d)(1), and possessing an unregistered firearm, in violation of 26 U.S.C. §§ 5861(d) and 5871.  At trial, Pereira identified McClinton as the one who had been carrying the sawed-off shotgun and who had shoved it under the bed immediately before being arrested.  Ramos also identified McClinton as the individual that Pereira had pointed out that evening in the courtyard, and he further testified to seeing McClinton with the shotgun.  In addition, Barbara Rogers, a tenant of apartment 342B who was home the night of the incident, identified McClinton as the man who was arrested in her apartment.[2]

McClinton sought to introduce the testimony of his wife, Lisa Klutz, that a juvenile called D.R. had told her it was he, not McClinton, who hid the sawed-off shotgun under the bed.[3]  The Court conducted a hearing pursuant to Federal Rule of

---

[2] Rogers testified that McClinton had returned to Rogers's apartment and asked her to testify in court that McClinton had not been in her apartment on the night of January 5, 2007.  Though Rogers rebuffed him, McClinton appeared at the apartment two months later to request the same.  Rogers reported both visits to the police.  On August 6, 2007, McClinton's bail was revoked as a result of those attempts to influence Rogers.

[3] D.R. asserted his Fifth Amendment privilege and was therefore an unavailable witness.

3

Evidence 104 to determine whether Klutz could testify to D.R.'s confessions as a statement against interest under Federal Rule of Evidence 804(b)(3).[4] At that hearing, Klutz testified that D.R. had twice stated that he, not McClinton, was the one who put the sawed-off shotgun under the bed. According to Klutz, D.R. first made the admission on some unspecified day in the "winter" (App. 2 at 149), and then did so again several months later in the presence of his sister and Klutz while on a phone call to McClinton's public defender. Neither the public defender nor D.R.'s sister testified that D.R. had made those statements.

After concluding that "the evidence … [did] not clearly indicate the trustworthiness of the statement itself," the District Court excluded Klutz's testimony. (App. 2 at 207.) The Court noted that, despite there ostensibly being witnesses to those statements, McClinton had failed to produce those witnesses and so had failed to provide any adequate corroborating evidence. The Court also found it significant that Klutz, "probably the [person] most motivated" to see McClinton acquitted (App. 2 at 207), was

---

[4] Rule 804(b)(3) is a hearsay exception that makes admissible an out-of-court statement made by one who is unavailable if:

> (A) a reasonable person in the declarant's position would have made [that statement] only if the person believed it to be true because, when made, it was so contrary to the declarant's proprietary or pecuniary interest or had so great a tendency to invalidate the declarant's claim against someone else or to expose the declarant to civil or criminal liability; and

> (B) [it] is supported by corroborating circumstances that clearly indicate its trustworthiness, if it is offered in a criminal case as one that tends to expose the declarant to criminal liability.

FED. R. EVID. 804(b)(3).

4

a trained security officer "familiar with the criminal process" (App. at 200), and yet had not informed the police of the alleged exculpatory evidence. The Court observed that much of Klutz's story about how she came to interact with D.R. seemed implausible. Further, after contrasting her testimony with the testimony of Rogers and the officers, the Court concluded that "there was absolutely no basis on which [it] could find [her claims] credible." (App. 2 at 203.)

The trial thus proceeded without that hearsay evidence and the jury ultimately found McClinton guilty on both counts. On November 17, 2007, the Court sentenced McClinton to 120 months' imprisonment.

Instead of appealing, McClinton filed an unopposed motion to vacate the judgment pursuant to 28 U.S.C. § 2255, asserting, in part, that his attorney's failure to file a timely notice of direct appeal amounted to ineffective assistance of counsel. His motion was granted, and, on February 9, 2009, the District Court issued an amended judgment which mirrored the initial judgment.[5] This timely appeal followed.

## II.    Discussion[6]

McClinton argues that the District Court abused its discretion by failing to admit Klutz's testimony of D.R.'s alleged admissions of guilt as statements against penal

---

[5] Once the initial judgment was vacated McClinton could timely appeal. The District Court therefore dismissed all claims raised in McClinton's § 2255 motion without prejudice.

[6] The District Court had jurisdiction pursuant to 18 U.S.C. § 3231. We have jurisdiction pursuant to 28 U.S.C. § 1291.

interest under Rule 804(b)(3). We exercise plenary review of a district court's "interpretation of the rules of evidence." *Ansell v. Green Acres Contracting Co., Inc.,* 347 F.3d 515, 519 (3d Cir. 2003). However, we review for abuse of discretion a district court's decision to exclude hearsay evidence. *United States v. Starnes,* 583 F.3d 196, 213-14 (3d Cir. 2009). A court abuses its discretion if its decision to exclude evidence is found to be "arbitrary, fanciful, or clearly unreasonable." *Id.* (internal quotation marks omitted). It is the proponent of evidence that would otherwise be barred by the hearsay rule that carries the burden of proving the applicability of an exception. *See Idaho v. Wright*, 497 U.S. 805, 816 (1990) ("[T]he proponent of evidence presumptively barred by the hearsay rule … carri[es the] burden of proving that" the statements bear "sufficient indicia of reliability" to be admitted); *United States v. Paulino*, 445 F.3d 211, 220 (2d Cir. 2006) ("The burden is on the proponent of 804(b)(3) evidence to demonstrate sufficient corroboration."). A court's decision to exclude evidence should not be disturbed "unless no reasonable person would adopt the district court's view." *Starnes,* 583 F.3d at 214.

Rule 804(b)(3) permits the introduction of a hearsay statement if the declarant is unavailable and if a reasonable person in the declarant's position would not have made the statement if it were untrue "because, when made, it was so contrary to the declarant's proprietary or pecuniary interest or had so great a tendency to … expose the declarant to civil or criminal liability." FED. R. EVID. 804(b)(3)(A). To be admissible, however, a hearsay statement "offered in a criminal case as one that tends to expose the declarant to

criminal liability" must be "supported by corroborating circumstances that clearly indicate its trustworthiness." FED. R. EVID. 804(b)(3)(B). The purpose of the corroboration requirement is to "circumvent[] fabrication" of "either of the fact of the making of the confession or in its contents." FED. R. EVID. 804(b)(3) Advisory Committee Note to Subdivision (b), Exception (3).

It is undisputed that, for the purposes of Rule 804(b)(3), D.R. was unavailable and that a statement implicating D.R. as the one in possession of the unregistered sawed-off shotgun would potentially expose him to criminal liability. What remains to be answered is whether it was error for the District Court to conclude that there was insufficient corroborating evidence to clearly indicate the statement's trustworthiness. *See* FED. R. EVID. 804(b)(3).

We hold that it was not. As the District Court found, the record reveals "little, if any corroboration" that D.R. even made the alleged statements.[7] (App. 2 at 207.) The lack of corroborating evidence is especially problematic because the statements are at odds with others who, unlike Klutz, were at the apartment the night McClinton was arrested and the sawed-off shotgun was recovered. Other factors likewise erode any trustworthiness of the statements: Klutz, as McClinton's wife, might be biased; the

---

[7] We agree with the District Court that the phone record offered to corroborate Klutz's claim that she handed D.R. her phone and that D.R. then told McClinton's public defender that the sawed-off shotgun was his is inadequate to demonstrate that D.R. in fact made the statement. We conclude that, because all the phone record establishes is that a phone call was made from Klutz's phone to the public defender on that day, it gives no indication who made the call or what was said during the call.

record reveals that McClinton is not above attempting to coerce people to "come to court to lie for him" (App. 2 at 205), as evidenced by his attempts to have Rogers do the same; the circumstances surrounding the statements are vague and, according to the District Court, incredible; Klutz failed to report D.R.'s alleged statements to the police; and no one else testified in support of Klutz's account, even though there were supposedly two other witnesses – one of whom was McClinton's former attorney. Under these circumstances, the District Court was clearly within its discretion in excluding the proffered hearsay.[8]

## III.    Conclusion

For the foregoing reasons, we will affirm the judgment of conviction.

---

[8] To the extent McClinton argues that the District Court should have applied the multi-factor test outlined in *United States v. Bumpass,* 60 F.3d 1099, 1102 (4th Cir. 1995), we note that we have never cited to *Bumpass*, let alone precedentially adopted its multi-factor test such that it might have been an error for the District Court to fail to apply it.

McClinton also argues that the District Court "failed to do a complete analysis" or develop Klutz's testimony. (Appellant's Opening Brief at 12.) Those arguments are unavailing because the record reveals that the District Court engaged in an adequate examination of Klutz and carefully considered many factors – the lack of testimony corroborating the statements, the statements of three other witnesses which conflicted with Klutz's statement, Klutz's potential bias, the vague and somewhat implausible account of the circumstances surrounding the alleged statements, and McClinton's prior attempts to undermine the veracity of testimony that would be provided at trial – before concluding there was insufficient evidence indicating the trustworthiness of the statements.